UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARCEL ALBERT, Professionally Known as
MARC MYSTERIO,

Plaintiff(s),                    CIVIL ACTION NO.: 25-1705

-against-

DISTROKID LLC,
and AMAZON.COM SERVICES LLC

Defendant(s).

---

## COMPLAINT IN A CIVIL ACTION

Plaintiff, Marcel Albert, Professionally Known as Marc Mysterio, by and through his

undersigned attorneys, as for his complaint against the Defendants alleges as follows:

### JURISDICTION

This Honorable Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332.

### JURY TRIAL DEMANDED

Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to

Fed. R. Civ. P. 38(b).

### VENUE

Venue properly lies in the Southern District of New York under 28 U.S.C. § 1391(b),

in that this is the District in which the Defendants reside, in that they have their principal place of

business in the State, within this District.

### THE PARTIES

1.     Plaintiff, Marcel Albert, Professionally Known as Marc Mysterio, (Hereinafter

"Plaintiff") is and at all times relevant herein, was a resident of the Republic of Ireland,

and the Country of Canada.

2. DistroKid LLC, is and at all times relevant herein was a foreign limited liability company existing under and by virtue of the laws of the State of Delaware, which was authorized to do business and did in fact do business in the State of New York, with its principal place of business within the State of New York in New York County.

3. Prior to November 20, 2019, DistroKid LLC, did business under the name PK Interactive LLC and on or about November 20, 2019 PK Interactive LLC, amended its Certificate of Formation to amend its name to DistroKid LLC.

4. Despite PK Interactive LLC amending its name to DistroKid LLC, on or about November 20, 2019, DistroKid LLC, continued to do business under both names DistroKid LLC and PK Interactive LLC.

5. Amazon.Com Services LLC. (Hereinafter "Amazon"), is and at all times relevant herein was a limited liability company existing under and by virtue of the laws of the State of Delaware, which was authorized to do business and did in fact do business in the State of New York, with its principal place of business within the State of New York in New York County.

6. Plaintiff is and at all times relevant herein was a musician, songwriter, composer, producer and DJ, who has and continues to compose, remix, record, produce, perform remaster and create musical works and musical recordings and did business and continues to do business under the creative and professional name Marc Mysterio.

7. Plaintiff is an international celebrity, recording artist, actor, athlete and is the founder of World Class Records & Amerada Music.

8. Plaintiff has Gold, Platinum and Multi-Platinum Certifications for his work as a songwriter and/or recording artist with the Recording Industry Association of America

(RIAA) in the United States, the British Phonographic Industry (BPI) in the United Kingdom, International Federation of the Phonographic Industry (IFPI) in Austria and Finland and the Australian Recording Industry Association (ARIA) in Australia.

9. Plaintiff has had numerous musical works and/or musical recordings achieve notoriety including but not limited to (i) "Be the Truth", which reached #7 on the US Billboard Next Big Charts in 2016, (ii) The Dancefloor which debuted in 2023 at 41 on the Billboard Hot Dance/Electronic Songs, (iii) "Tomorrow" featuring Samantha Fox that appears on her 2009 Greatest Hits Album, (iv) "Promised Land" as part of Crash Test Dummies, and (v) has achieved Gold Certifications from the International Federation of the Phonographic Industry, (IFPI) for his works entitled Liquor & Whores with Trailer Park Boys and Balans with Alexandra Stan.

10. Plaintiff has contributed music to and guest starred on Netflix's Trailer Park Boys, has collaborated on musical works and with celebrities such as Crash Test Dummies, Flo Rida, Samantha Fox, Aviici and David Guetta, and has challenged Jake Paul to a boxing match after receiving the support of the IBA to do so for their vacant IBA Super Cruiserweight Intercontinental Championship.

11. Between May 1, 2020 and the present and at all times relevant herein, DistroKid LLC provided services to musicians, in which for a fee DistroKid LLC, distributes and populates musicians' musical works and/or musical recordings, modifies the copy to conform with each Digital Store's uploading requirements; uploads the modified copy of the musical work and/or musical recordings to the selected Digital Stores and placed musicians' musical recordings on various web streaming platforms, known as Digital Service Providers (Hereinafter "DSP"), which are/were selected by the musician.

12. Between May 1, 2020 and the present and at all times relevant herein, Amazon.Com Services LLC., owned, operated and controlled a subscription based DSP streaming musical service, which did business under the trade name Amazon Music.

13. Between May 1, 2020 and the present, Plaintiff was the creator, author and copyright owner, both under the common law and within the definition of 17 USC § 106A, of various songs, compilations, musical works and musical recordings, which are more fully identified in Exhibit 1, hereto, (Hereinafter "Plaintiff's music catalog" or "the music catalog" interchangeably) and Plaintiff incorporates by reference the musical catalog as if said songs, compilations, musical works and musical recordings, were fully stated at length, herein.

14. The amount in controversy herein, exceeds the sum of Seventy Five Thousand Dollars ($75,000.00).

### COUNT I: BREACH OF CONTRACT AGAINST DISTROKID LLC

15. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

16. Between May 1, 2020 and the present, Plaintiff was the creator and copyright holder of all of the musical recordings contained in the music catalog, including the copyrights to both the sound recordings, musical works as well as the right to create derivative works and/or recordings thereof.

17. On or about June 8, 2021, Plaintiff by and through his agent Brett Kaido, entered into a contract with Distrokid LLC, by electronically accepting the DistroKid Distribution Agreement, which were DistroKid LLC's standard terms and conditions, a copy of which is attached as Exhibit 2.

18.     The pertinent terms of the aforesaid DistroKid Distribution Agreement were that Plaintiff agreed to pay a fee to Distrokid LLC, and in exchange for said fee, Distrokid LLC was granted a limited license to distribute Plaintiff's music catalog, and Distrokid LLC agreed to provide Plaintiff with access to their platform, in which Plaintiff could upload his music catalog, designate various digital stores, DSP streaming services, and other digital services within DistroKid LLC's distribution network where the Plaintiff's music catalog would be made available for customers to play the musical recordings of the music catalog, and DistroKid LLC would receive all royalties for any exploitation of Plaintiff's music catalog and remit to Plaintiff all such royalties.

19.     The aforesaid DistroKid Distribution Agreement incorporates and selects New York law as the governing law under which the contract's terms and conditions will be construed and enforced.

20.     Under the aforesaid DistroKid Distribution Agreement, Plaintiff remained the lawful owner of all copyrights to the music catalog.

21.     Under the aforesaid DistroKid Distribution Agreement, Plaintiff was entitled to one hundred percent (100%) of the royalties received by DistroKid LLC for exploitation of the music catalog, minus any third party fees actually incurred for currency transfers or currency exchanges.

22.     Under the aforesaid DistroKid Distribution Agreement, any sums that DistroKid LLC received or paid in foreign currency were to be charged by DistroKid LLC to Plaintiff at either the same rate received by DistroKid LLC at the current spot exchange rate at the time of transaction from the Digital Service Provider (DSP) to DistroKid LLC.

23. Between December 1, 2023 and September 10, 2024, to the extent that DistroKid LLC paid Plaintiff the royalties, they paid out same in Euros.

24. At all relevant times herein, under the aforesaid agreement DistroKid LLC did not have the right to mark up any currency exchange charges, charge Plaintiff fees in addition to the actual fees charged by said third parties and/or benefit in any way based upon the currency conversion.

25. The aforesaid DistroKid Distribution Agreement was renewed by Plaintiff and/or his agent and DistroKid LLC every year through and including 2024.

26. On or about August 11, 2023, Plaintiff, though DistroKid LLC's portal opted to have his music catalog submitted exclusively to Amazon Music, which enabled Amazon Music subscribers including but not limited to Plaintiff's fans to stream musical recordings from the music catalog, and for each exploitation of Plaintiff's music by a customer of Amazon Music, Plaintiff was entitled to a royalty from Amazon.

27. Between December 1, 2023 and September 10, 2024 Plaintiff, through the DistroKid portal, submitted the music catalog to Amazon Music, and music recordings from the music catalog were made available to be played by Amazon Music's customers.

28. Upon information and belief, between August 11, 2023, and September 10, 2024, DistroKid LLC submitted Plaintiff's music catalog to Amazon Music on Plaintiff's behalf either in the name of DistroKid LLC and/or in the name of PK Interactive LLC.

29. Upon information and belief between August 11, 2023, and September 10, 2024 royalties for the exploitation of Plaintiff's music catalog on Amazon Music were paid by Amazon to DistroKid LLC and/or PK Interactive LLC.

30. At all relevant times herein, herein, DistroKid LLC, issued account statements of royalties, approximately two months after the reporting month in which royalties of Plaintiff's account were paid.

31. Upon information and belief, between August 11, 2023, and September 10, 2024, Plaintiff was never issued a royalty account statement by DistroKid LLC or by PK Interactive LLC, nor were the royalties that were received by PK Interactive LLC for the exploitation of Plaintiff's music catalog on Amazon Music remitted to Plaintiff.

32. At all relevant times herein, DistroKid LLC was contractually obligated to collect Plaintiff's royalties and to remit the entirety of said royalties to Plaintiff's account, except for certain permitted charges and to provide a compete, accurate and truthful account statement for the Plaintiff's royalties.

33. Distrokid's account statement for February, 2024 reported and accounted for royalties that were received by DistroKid for Plaintiff's music in December, 2023.

34. Between December 1, 2023, and July 31, 2024, DistroKid LLC, received royalties from Amazon for music recordings from Plaintiff's music catalog that were played by customers of Amazon Music, all of which DistroKid LLC, was required to remit to the Plaintiff in full, minus any actual third party charges.

35. Between December 1, 2023, and July 31, 2024, DistroKid LLC, received royalties from Amazon for the exploitation of Plaintiff's music catalog and musical recordings on Amazon Music, which DistroKid LLC, either individually or by and through its employees and agents systematically failed to remit to Plaintiff in full, either by failing to credit Plaintiff's account for the full amount of the royalties received, and/or paying him at a reduced stream rate compared to what they actually received from Amazon Music

and/or by inflating charges for currency exchange and tacking on markups of an additional 2.7% percent in currency exchange fees, when upon information and belief, the actual cost to DistroKid LLC for a currency exchange was 0.5% commission (or less) above mid-market rate, all in violation of the terms of the contract between the Plaintiff and DistroKid LLC.

36. As of August 30, 2024, Plaintiff had 1,232,566 fans, which are listeners that have actively listened to Plaintiff's musical recordings on multiple occasions and/or have added Plaintiff's music catalog to their library and playlists or purchased digital/physical music from sources other than Amazon and 14,261 superfans, which are fans that are responsible for one third of an artist's total streams on Amazon Music.

37. Between August 1, 2024 and September 6, 2024, Plaintiff had 4,307,814 total listeners on Amazon music with 17,097,678 total streams of musical recordings from Plaintiff's music catalog.

38. Between August 1, 2024 and September 10, 2024, Plaintiff's musical recordings from the music catalog generated substantial revenue, in that Plaintiff's musical recordings on Amazon Music Unlimited had approximately 18,000,000 streams from 4,500,000 unique listeners, 61% of which were the direct result of Amazon Music Staff Curators placing Plaintiff's music on Amazon's Stations.

39. Upon information and belief, DistroKid LLC, either directly and/or in the name of PK Interactive LLC, received at least Two Hundred and Forty Five Thousand Dollars ($245,000) in royalties from Amazon Music, and in all probability significantly more, from exploitation of Plaintiff's music catalog between August 1, 2024 and September 10, 2024.

40. At all relevant times herein, DistroKid LLC, either individually or by and through its agents and employees, and/or through the name of PK Interactive LLC failed to remit to the Plaintiff any of the aforesaid royalties, which were received by DistroKid LLC, either directly or in the name of PK Interactive LLC, for exploitation of Plaintiff's music catalog between August 1, 2024 and September 10, 2024.

41. By and through the foregoing, DistroKid LLC, has breached the foregoing contract and is liable to Plaintiff for the full amounts of royalties received from exploitation of Plaintiff's music catalog between December 1, 2023 through September 10, 2024.

42. Distrokid LLC is liable to Plaintiff for all royalties which it collected but failed to distribute to the Plaintiff, including but not limited to any royalties collected in the name of PK Interactive LLC.

43. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

44. On October 13, 2024 and again on November 12, 2024, Plaintiff provided notice of breach to DistroKid LLC's in-house manager of legal and business affairs and DistroKid LLC has refused or failed to remedy the breach.

## COUNT II: ACCOUNTING AGAINST DISTROKID LLC

45. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

46. At all times relevant herein, Defendant DistroKid LLC, either directly or under the name of PK Interactive LLC, has come into possession of Plaintiff's property, namely the aforementioned royalties and had an obligation to account for same.

47. Distrokid LLC has failed to account to Plaintiff for all of the royalties which it received which it derived from exploitation of Plaintiff's works.

48. Plaintiff is entitled to an accounting of all royalties received by DistroKid LLC, including but not limited to any such royalties received in the name of PK Interactive LLC, as a result of any exploitation of Plaintiff's musical recordings.

49. Plaintiff has no adequate remedy at law.

50. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

## COUNT III: NEGLIGENCE AGAINST DISTROKID LLC

51. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

52. Pursuant to the terms of the DistroKid Distribution Agreement, DistroKid LLC undertook the obligation and duty to the Plaintiff to submit Plaintiff's music recordings and metadata provided from the music catalog in a proper format to Amazon Music, as well to assign ISRC (International Standard Recording Code) Codes for each recording submitted, including but not limited to, different versions of a musical recordings, such as alternative mix titles and/or/for remastered works to be compliant with Amazon Policies concerning metadata so as not to be incorrectly flagged by Amazon Music's artificial intelligence screens as a duplicate release of the original and to refrain from reusing an original recording's (ISRC) Code on re-mastered and/or re-titled musical recordings.

53. Upon information and belief, between August 11, 2023 and September 10, 2024, DistroKid LLC, was negligent and careless and deviated from accepted industry standards, by reusing original recording's ISRC Code on re-mastered and/or re-titled

recordings musical recordings from the Plaintiff's music catalog, and in failing to utilize a new ISRC Code for different versions of a musical recordings including but not limited to remastered works with different mix titles for each subsequent retitled and/or remastered release.

54. Upon information and belief, as a direct and proximate result of DistroKid LLC's aforementioned negligence, Amazon Music wrongfully flagged Plaintiff's artist profile on Amazon Music, and the entire Marc Mysterio music catalog available on Amazon Music as fraudulent due to the re-use of previously issued ISRC codes on releases with different metadata, including but not limited to re-masters, and on or about September 10, 2024, Amazon implemented a shadowban in which Plaintiff's fans on Amazon Music and all Amazon Music users in the United States were unable to play Plaintiff's musical recordings and said shadowban has also been applied on new song releases from Marc Mysterio releases subsequent to the imposition of the shadowban by distributors other than Distrokid LLC which caused Plaintiff's fans on Amazon Music to be blocked on Amazon Music and Alexa from playing or streaming Plaintiff's musical recordings in the music catalog, and Plaintiff has been removed from being featured by curators and the similar artists Amazon's algorithms with other similarly popular artists, and his music blocked from appearing on Amazon Music Stations which has likewise resulted in a reduction of new streams, fans and listeners.

55. On October 13, 2024 and again on November 12, 2024, Plaintiff provided DistroKid LLC with notice that they were continuing to perform in a negligent manner by re-using ISRC codes on releases with different metadata, including but not limited to re-masters, and DistroKid LLC failed, refused or neglected to take remedial action.

56. As a direct and proximate cause of the aforementioned negligence by DistroKid LLC, Plaintiff has been caused to lose royalties, which he otherwise would have received had the shadowban not been placed on Plaintiff's music catalog by Amazon.

57. As a direct and proximate cause of the Defendant DistroKid LLC's negligence, the Shadowban blocked Plaintiff's musical recordings from being added to Amazon Stations by Amazon Staff Curators, which have caused pecuniary damages to Plaintiff and damaged his economic opportunities and advantage, and which has caused him to lose over 300,000 fans and 4,000 superfans, on the Amazon music platform, which has a direct correlation to the number of streams that Plaintiff's musical recordings will receive and in turn caused a major reduction in the Plaintiff's royalties and earning potential.

58. By and through the foregoing negligence of DistroKid LLC, Plaintiff has proximately been caused to suffer and is continuing to suffer pecuniary damages, lost earning, lost economic opportunity and loss of income, the amount of which will be determined at trial.

59. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

## COUNT IV:   BREACH OF CONTRACT AGAINST THE AMAZON DEFENDANTS

60. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

61. On or about August 11, 2023, and at all relevant times herein DistroKid LLC, either directly or under the name PK Interactive LLC, as Plaintiff's agent, through its contractual relationship with Amazon submitted Plaintiff's music to Amazon Music for

said musical recordings to be made available to be played by Amazon's customers pursuant to the terms and conditions between DistroKid LLC and Amazon.

62. On or about August 11, 2023, and at all relevant times herein DistroKid LLC, as Plaintiff's agent, entered into an agreement with Amazon to submit Plaintiff's music to Amazon Music for said musical recordings to be made available to be streamed by Amazon's customers.

63. Between August 11, 2023, and September 10, 2014, Plaintiff's musical recordings from Plaintiff's music catalog were being actively played, listed and/or streamed by Amazon's customers on Amazon Music.

64. At all times relevant herein Amazon offered Plaintiff's musical recordings from Plaintiff's music catalog, to its subscription customer base for which Amazon received subscription fees.

65. By featuring Plaintiff's musical recordings on Amazon Music, Amazon had an obligation, both under the contract, and under its obligations of good faith and fair dealing to allow its subscribers including but not limited to Plaintiff's fans, superfans and Amazon's curators to stream Plaintiff's musical recordings and to refrain from intentionally interfering with Amazon Music's subscribers' ability to stream Plaintiff's musical recordings.

66. By and through the foregoing, DistroKid LLC, as Plaintiff's agent entered into a contract on Plaintiff's behalf with Amazon, which obligated Amazon to pay royalties for the exploitation of Plaintiff's music to Distrokid LLC, and/or Plaintiff's other designated agent.

67. Plaintiff at all times relevant herein, was a third party beneficiary of the agreement between DistroKid LLC and Amazon.

68. At all times relevant herein, Amazon had contractual duties to the Plaintiff, which included the inherent duties of good faith, fair dealing, and the duty to refrain from actions which would interfere with Plaintiff receiving the benefit of his bargain, namely royalties based upon streams of his musical recordings on Amazon Music.

69. In July, 2024, August, 2024 and early September, 2024, Plaintiff's musical recordings were gaining in popularity, and Plaintiff's listenership was on an upward trajectory.

70. Between August 1, 2024 and September 6, 2024, Plaintiff's music catalog was increasing in popularity and Plaintiff had 4,307,814 total listeners with 17,097,678 total streams of musical recordings from Plaintiff's music catalog.

71. On or about September 10, 2024, Amazon, in bad faith, breach its contractual obligations by shadowbanning Plaintiff's music, in that they continued to display Plaintiff's image as part of their music that was available for streaming, but when fans attempted to stream Plaintiff's musical recordings or made voice requests[1] that Plaintiff's musical recordings be played on Alexa, Amazon caused an error message to be displayed on the Amazon Music platform, and in response to voice requests from Alexa indicated that Plaintiff's music was not available.

72. Amazon's actions constituted a breach of its obligations under the contract, as well as their obligations to act in good faith and deal fairly with Plaintiff as a participating artist of the Amazon Music platform.

---

[1] Voice requests as defined by Amazon are explicit requests to Alexa to play music that matched an artist, album, song, or lyric in Amazon's catalog, which includes requests such as "Alexa, play the artist _", "Alexa, play the song _", "Alexa, play the album_", or "Alexa, play the song that goes_".

73. At no time, did Amazon notify Plaintiff or Plaintiff's authorized agent, that it was cancelling the contract, or otherwise halting Plaintiff's music from being played on Amazon music.

74. Amazon's actions in shadowbanning the Plaintiff's music catalog and musical recordings were done in bad faith, without cause, justification and upon information and belief were contrary to Amazon's terms and conditions.

75. Between August 1, 2024 and September 6, 2024, Plaintiff has 4,307,814 total listeners with 17,097,678 total streams of musical recordings from Plaintiff's music catalog.

76. Between August 1, 2024 and September 10, 2024, Plaintiff's musical recordings from the music catalog generated substantial revenue, in that Plaintiff's musical records on Amazon Music Unlimited had approximately 18,000,000 streams from 4,500,000 unique listeners, 61% of which were the direct result of Amazon Music Staff Curators programming priority tracks into stations at either heavy, medium, or light rotation, and thereby placed Plaintiff's music on Amazon's Stations which play a mix of the top songs for a given genre, mood, or theme and offer artist-based stations that include the artist's catalog plus songs from similar artists from Amazon's team of curators.

77. Upon information and belief, Plaintiff was entitled to at least Two Hundred and Forty Five Thousand Dollars ($245,000) in royalties from Amazon Music, and in all probability significantly more, from exploitation of Plaintiff's music catalog between August 1, 2024 and September 10, 2024.

78. Upon information and belief, Amazon failed to remit the aforementioned royalties due Plaintiff of at least Two Hundred and Forty Five Thousand Dollars ($245,000) in

royalties from Amazon Music, and in all probability significantly more, from exploitation of Plaintiff's music catalog between August 1, 2024 and September 10, 2024.

79. By and through the aforementioned act of shadowbanning Plaintiff's music, Amazon has deprived and is continuing to deprive Plaintiff of the benefit of his bargain by interfering with and preventing Amazon's subscribers including Plaintiff's fans and superfans from streaming Plaintiff's musical recordings, which in turn prevented Plaintiff from receiving the royalties that he would have been entitled to had Amazon not blocked the ability of its subscribers to stream Plaintiff's musical recordings and/or make voice requests for same on Alexa.

80. By and through the aforementioned act of shadowbanning Plaintiff's music, Amazon further breached their contractual obligations and caused Plaintiff to suffer economic harm by blocking Amazon's curators from programming Plaintiff's music on stations and/or from blocking fans from receiving notifications of Plaintiff's new releases.

81. As a direct and proximate cause of the aforementioned breaches of contract by Amazon, Plaintiff has been caused to lose royalties, which he otherwise would have received had the shadowban not been placed on Plaintiff's music catalog by Amazon, which upon information and belief, would have been equal to or greater than the royalties earned in 30 days prior to the shadowban being placed for each month from when the shadowban was placed through the present and continuing.

82. As a direct and proximate cause of the shadowban, Amazon blocked Plaintiff's musical recordings from not only being streamed by Amazon subscribers, but the shadowban also prevented Plaintiff's musical recordings from being added to Amazon Stations by Amazon Staff Curators, which have caused pecuniary damages to Plaintiff and have

damaged his economic opportunities and advantage, and which has caused him to lose over 300,000 fans and four thousand superfans, on the Amazon music platform, which has a direct correlation to the number of streams that Plaintiff's musical recordings will receive and in turn caused a major reduction in the Plaintiff's royalties and earning potential.

83. According to data published by Amazon, the majority of superfans will continue to listen to an artist's music for at least the next 30 days.

84. Therefore by shadowbanning Plaintiff's music catalog, Amazon directly caused Plaintiff to suffer damages including loss of royalties, damage to reputation, loss of fans and superfans, and caused him to suffer a reduced earning capacity.

85. Plaintiff is entitled to judgment against Amazon in an amount to be determined at trial.

86. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

## COUNT V: QUASI CONTRACT CLAIM AGAINST AMAZON

87. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

88. Amazon, by offering Plaintiff's musical catalog to their subscribers has by their conduct assented to a contractual relationship with the Plaintiff, either directly or indirectly.

89. Between August 1, 2024 and September 10, 2024, Plaintiff's musical recordings from the music catalog generated significant fan interest, in that Plaintiff's musical records on Amazon Music Unlimited had 18,000,000 streams from 4,500,000 unique listeners 61% of which were the direct result of Amazon Music Staff Curators placing Plaintiff's music on Amazon's Stations.

90. Amazon at all relevant times herein, derived revenue from subscribers who paid to stream music on Amazon Music, which included Plaintiff's music catalog.

91. By and through the foregoing, Plaintiff and Amazon formed a contract, under which Plaintiff had contractual rights to have his music featured on Amazon Music and to receive royalties, based upon Amazon's customers playing Plaintiff's musical recordings.

92. By and through the foregoing Amazon Music offered Plaintiff's music catalog on its platform and offered its subscribers the opportunity to stream same as part of the subscription services which Amazon derives revenue from, a contract was and at all times relevant herein, is implied by law.

93. Plaintiff is entitled to recover against Amazon in equity through the doctrine of quasi contract.

94. It would be unjust and against equity to allow Amazon to grant its subscribers access to Plaintiff's musical recordings between August 1, 2024 and September 10, 2024 without paying Plaintiff the royalties due him.

95. It would be against equity and unjust to allow Amazon to retain the benefits of having permitted access to Plaintiff's music catalog, without enforcing quasi contractual obligations of good faith and fair dealing upon Amazon.

96. Amazon by failing to pay Plaintiff the royalties for the exploitation of the music catalog recordings between August 1, 2024 and September 10, 2024 had breached its quasi contractual obligations to the Plaintiff.

97. Amazon's actions of simultaneously publishing Plaintiff's image and music catalog as available to its subscribers and shadowbanning and preventing its users from streaming Plaintiff's musical recordings on Amazon Music and/or blocking same from being played

in response to voice requests on Alexa, breaches Amazon's quasi contractual duties including fair dealing and good faith.

98. Amazon's aforementioned actions deprived the Plaintiff of the royalties which he was entitled to, as well as those he was entitled to earn under the aforesaid quasi contract.

99. As a direct and proximate cause of the aforementioned breaches by Amazon, Plaintiff has been caused to lose royalties, which he otherwise would have received had the shadowban not been placed on Plaintiff's music catalog by Amazon, which upon information and belief, would have been equal to or greater than the royalties earned in 30 days prior to the shadowban being placed for each month from when the shadowban was placed through the present and continuing.

100. Plaintiff has no adequate remedy at law.

101. Plaintiff is entitled to recover against Amazon in quasi contract in and amount to be determined at trial.

102. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

## COUNT VI: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS BASED UPON SHADOWBANNING

103. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

104. Plaintiff at all times relevant herein, had both existing economic relationships and prospective business relationships with Amazon Music subscribers including but not limited to Plaintiff's fans and superfans.

105. In the month and a half immediately preceding the September 10, 2024 shadowban, Plaintiff had 4,307,814 total listeners on Amazon music with had 1,232,566 fans and

14,261 superfans and 17,097,678 total streams of musical recordings from Plaintiff's music catalog on Amazon Music.

106. In the months leading up to the shadowban, the Plaintiff's fan base, listeners and total streams of the music catalog were increasing substantially month over month and were trending higher.

107. Amazon by having Plaintiff's music catalog and images of Plaintiff, who was and is a celebrity, displayed on their subscription service, had actual knowledge of Plaintiff's prospective business and economic relationship with its subscribers.

108. At all times relevant herein, whenever an Amazon subscriber streamed Plaintiff's musical recording(s) on Amazon Music or made a voice request to play same on Alexa, Plaintiff was entitled to be paid a royalty by Amazon.

109. At all times relevant herein, by simultaneously displaying Plaintiff's image and advertising Plaintiff's music catalog as available to stream on Amazon music, Amazon received both subscription fees and the intangible benefits of advertising to Plaintiff's fans and superfans that in exchange for their payment of subscription fees to Amazon, said fans and superfans could access Plaintiff's musical recordings.

110. Defendant Amazon's action of shadowbanning the Plaintiff's musical recordings was wrongful, immoral, morally culpable, tortious and without legal justification.

111. By shadowbanning the Plaintiff's musical recordings, Amazon intentionally interfered with Plaintiff's economic business relationship and economic advantage with Amazon Prime's subscribers, including but not limited to his fans and superfans.

112. As a direct and proximate result of the aforementioned shadowban, Amazon interfered with and prevented Plaintiff from earning the royalties that he was entitled to and have

further caused and is continuing to cause Plaintiff to sustain a loss of earning potential in the form of the royalties that he would receive for streaming of his musical recordings, but for Amazon's wrongful acts of shadowbanning his music.

113. As a direct and proximate cause of the shadowban, Amazon blocked Plaintiff's musical recordings from not only being streamed by Amazon subscribers, but the shadowban also prevented Plaintiff's musical recordings from being added to Amazon Stations by Amazon Staff Curators, and to stations of similar artists by Amazon algorithms which have caused pecuniary damages to Plaintiff and have damaged his economic opportunities and advantage, and which has caused him to lose over 300,000 fans and four thousand superfans, on the Amazon music platform, which has a direct correlation to the number of streams that Plaintiff's musical recordings will receive and in turn caused a major reduction in the Plaintiff's royalties and earning potential.

114. As a direct and proximate cause of the aforementioned tortious interference with Plaintiff's prospective business relations by Amazon, Plaintiff has been caused to lose royalties, which he otherwise would have received had the shadowban not been placed on Plaintiff's music catalog by Amazon, which upon information and belief, would have been equal to or greater than the royalties earned in 30 days prior to the shadowban being placed, for each month from when the shadowban was placed through the present and continuing.

115. Amazon is liable to the Plaintiff for tortious interference with prospective business relations.

116. Based upon the foregoing, Plaintiff is entitled to a compensatory award against Amazon for his loss of prospective economic and business opportunities, in an amount to be determined at trial.

117. Plaintiff is entitled to nine percent (9%) retroactive statutory interest under New York law pursuant to C.P.L.R § 5001.

**COUNT VII: INJUNCTIVE RELIEF**

118. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

119. The amount of damage that is being done to Plaintiff's career and loss of fans as a result of the shadowban is difficult if not impossible to measure with precision.

120. Plaintiff cannot be made whole completely by the award of monetary damages alone.

121. Plaintiff's celebrity status and relationship with his fans and superfans is a unique intangible property right.

122. As a direct and proximate cause of the shadowban, Amazon's algorithms have ceased associating Plaintiff with "related artists" such as Taylor Swift, Dua Lipa, Ed Sheeran, Billie Eilish, Mylie Cyrus, Teddy Swims, Sabrina Carpenter, which Plaintiff was previously considered by Amazon's algorithms to be a similar or related artist, with common fans and/or super fans, which has and is continuing to prevent Plaintiff from acquiring new fans, which in turn has and will in the future cause irreparable injury that cannot be fully measured or compensated by money damages alone injury that cannot be fully measured or compensated by money damages alone.

123. Defendant will not be harmed by any injunctive relief.

124. The balance of the equities lie in favor of granting injunctive relief to Plaintiff.

125. Plaintiff is suffering and will continue to suffer an irreparable injury if injunctive relief is denied.

126. Plaintiff has no adequate remedy at law.

127. Plaintiff is entitled to an injunction preventing Amazon from engaging in any further shadowban of his musical recordings and artist profile.

**COUNT VIII: NEW YORK CIVIL RIGHTS LAW § 50 and 51**

128. Plaintiff repeats, reiterates and realleges each and every one of the forgoing allegations as if more fully stated herein.

129. Incident to placing the music catalog on Amazon Music, Plaintiff granted Amazon a limited and conditional license to use his image for the limited purpose of same being utilized in conjunction with the streaming of the musical recordings from the music catalog.

130. Between July 1, 2024 and August 31, 2024 the Amazon Music Marc Mysterio station resulted in over 150,000 streams of Plaintiff's own musical recordings, programmed together with other similar artists music, which generated additional subscribers and revenue for Amazon.

131. In addition to using Plaintiffs Name, Image, likeness being displayed on his own Amazon Music profile, to wit, Marc Mysterio, in order to promote Plaintiff's music, Defendant Amazon additionally created a new artist station called "Marc Mysterio", utilizing Plaintiff's Name Image and Likeness to market this station which contained both music recorded by Marc Mysterio, and other artists deemed similar to Marc Mysterio, including but not limited to: Taylor Swift, Dua Lipa, Ed Sheeran, Miley Cyrus, Sabrina Carpenter and Teddy Swims, all without compensation to Plaintiff following the shadowban.

132. Amazon Music following the shadow ban continued to utilize the Music Marc Mysterio station to promote other similar artists after shadowbanning the Plaintiff.

133. On September 10, 2024, when the Defendant shadowbanned Plaintiff, the conditional license granted to use Plaintiff's image automatically expired and/or terminated.

134. Between September 10, 2024 and the present, Amazon has continued to use Plaintiff's name image, portrait, picture and likeness on its Amazon Music service and in so doing, represents to Amazon Music's subscribers that Plaintiff's musical recordings can be streamed on its service which has promoted Amazon Music to Plaintiff's fan base.

135. Between September 10, 2024 and the present, Amazon has used Plaintiff's name image, portrait, picture and likeness for advertising purposes and/or the purposes of trade without Plaintiff's consent and/or after said consent expired by reason of Amazon's failure to permit its subscribers to stream Plaintiff's music.

136. Amazon Music, at all relevant times herein had subscribers in New York State, to whom Plaintiff's image was published to on Amazon Music.

137. Amazon's actions have violated New York Civil Rights Law §§ 50 and 51.

138. Plaintiff is entitled to compensatory and exemplary damages by statute, as well as injunctive relief.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, in an amount to be determined by the trier of fact, for compensatory damages, incidental damages, costs, interest, punitive and exemplary damages and an injunction ordering Amazon to refrain any acts of shadowbanning of Plaintiff's musical recordings, The Marc Mysterio Station or Amazon Staff Curator's placement of Plaintiff's musical recordings in the future.

Dated: New York, N.Y.
       February 27, 2025

Yours etc.,

Law Office of Michael H. Joseph PLLC

BY: _____
     Michael H. Joseph, Esq.,
     18 West 33rd Street, Suite 400
     New York, NY 10001
     Tel: 212-858-0503
     Email: michael@newyorktriallawyers.org .